IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO VALLE,<br>      Petitioner,<br>  vs.<br>D. L. RUNNELS, Warden,<br>      Respondent. | No. C 03-05612 JW (PR)<br><br>ORDER DENYING PETITION FOR<br>A WRIT OF HABEAS CORPUS |

Petitioner, a state prisoner, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his state conviction. After a court trial in Superior Court of the State of California in and for the County of Santa Clara, petitioner was found guilty of second degree murder (Cal. Penal Code § 187), two counts of assault with a deadly weapon (Cal. Penal Code § 245(a)(1)), and that he was personally armed with a knife and inflicted great bodily injury (Cal. Penal Code § 12022(b)(1)). On September 24, 1999, petitioner was sentenced to an aggregate state prison term of 22 years to life.

Petitioner appealed his conviction. The California Court of Appeal affirmed

the conviction and the California Supreme Court denied his petition for review on September 18, 2002.

Petitioner timely filed the instant federal habeas petition on December 15, 2003, alleging insufficient evidence to support the murder conviction, improper jury instructions, and cumulative error. Per order filed on November 16, 2004, this Court found that the petition, liberally construed, stated cognizable claims under § 2254, and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer, and petitioner has not filed a traverse.

## **FACTUAL BACKGROUND**

The California Court of Appeal summarized the facts of the case as follows:

> On September 18, 1998, sometime after 10:00 p.m., George Molina and Arthur and Walter Martinez walked to a residence at 8090 Springdale Court in Gilroy. Molina entered, and Arthur and Walter stood outside. All three were wearing articles of red clothing. Minutes later, [petitioner and Hernandez][1] and a third man approached Walter and Arthur. Arthur and [petitioner] said "what's up" to each other. Molina came back outside, and at that point, [petitioner and Hernandez] and their friend attacked Molina, Arthur, and Walter. Arthur suffered stab wounds in the stomach, arm, head and buttocks. Molina was stabbed in the upper chest, stomach, and forearm and suffered a collapsed clung. Walter was stabbed in the chest and later died.
>
> Molina testified that someone the size of [petitioner] attacked him, but he could not see who it was. Arthur testified that he tried to help Molina, but [petitioner] stabbed him and then ran. Arthur chased after him but stopped because he was bleeding and saw a police officer. Neither Arthur or Molina ever saw a knife, and they did not have knives themselves.
>
> Elizabeth Centeno, Edelmira Mendoza, Carlos Ybarra, and Tony Zepeda lived at 8090 Springdale Court. They testified that earlier in the day, there had been a fight between the residents of 8090 Springdale, including Ybarra and Alfredo Zepeda, and their

---

[1] The state appellate court refers to "dependants" throughout its order because petitioner filed his direct appeal with a co-defendant Ricardo Hernandez. Hernandez was also found guilty of second degree murder as well as three counts of assault with a deadly weapon.

Order Denying Petition for a Writ of Habeas Corpus
N:\Pro - Se\8.17.2007\03-05612 Valle05612_denyHC.wpd     2

neighbors at 8070 Springdale. As a result of that fight, Alfredo was arrested.

Later that night when Mendoza came home, Centeno, Ybarra, and Tony Zepeda told her about the fight and about Alfredo's arrest. A short time later, Molina, Arthur, and Walter arrived. Ybarra then saw [petitioner and Hernandez] and a third person approach the house. Ybarra and Tony also identified [petitioner and Hernandez]. Within moments, [petitioner] attacked Molina. Molina fought back but eventually fell down. [Petitioner and Hernandez] and their friend fled, and Mendoza, Ybarra, and Tony chased them.

As this incident was happening, Officer Nestor Quiones and the Gilroy Police Department was investigating a call from [petitioner's] mother about slashed tires and suspects heading toward Springdale Court. He noticed a pickup truck with slashed tires and a man - [petitioner's] father - standing outside, pointing toward Springdale Court. He then saw [petitioner] running his way and detained him. [Petitioner] was scared and said people were fighting at the end of the court and that he was chasing people who had been slashing tires. Quiones saw that [petitioner] had been stabbed. [Petitioner] kept trying to leave, but Quiones made him sit by the curb.[2] During this time, Quiones observed two young Hispanic males running in front of the houses on Springdale Court. Several other people, including Mendoza, approached and started yelling and challenging [petitioner]. Mendoza told Quiones that [petitioner] had been fighting at her house. [Petitioner] said, "'Shut up you stupid bitch. You don't know shit.'" Quiones ordered the others to leave.

On September 19, Officer Steve Baty of the Gilroy Police Department arrested Hernandez. In a taped interview, Hernandez denied participating in the fight on Springdale Court. He said he was with a man named Valentine watching a boxing match on television. At around 8:30 or 9:00 p.m., after the match, Hernandez went home and straight to bed. He said that his mother checked on him at around 11:00 p.m. that night. His mother woke him the next morning at 9:00 a.m.

Baty went to the house where Hernandez said he had watched the fight. A resident there was unable to identify Hernandez from a photo line-up. Others at the house recalled that Valentine had been there with some friends. Baty tried but was unable to locate Valentine.

Police also interviewed Tony and Ybarra. Tony reported that he recognized all three assailants, one of whom was named Kiki. He said that all three lived near each other on Forest Street. Ybarra also said that one of the men was named Kiki.

---

[2] [Petitioner] moved over to a bush. Police later found a knife with [petitioner's] fingerprints and Molina's blood on it. [footnote renumbered; originally footnote 3]

>	Monica Riojas lives at 8091 Springdale Court across from the Zepeda residence. She had dated Hernandez in the past, but at trial testified that she and he were just friends. However, after Hernandez was arrested, she wrote letters to him, and among other things, professed her love.
>
>	She testified that she had seen the earlier fight that resulted in Alfredo's arrest. Later that day, she was talking to Hernandez in front of his house, when a group of young people walked by, and one yelled "fucking scraps," which is an insult used by Norteños against Sureños. Hernandez wanted to find out who it was, but Riojas persuaded him not to. She said three of those people slashed tires as they made their way toward Springdale to the Zepeda residence. She paged Hernandez, but he did not respond. A short time later, she saw [petitioner] and two others go to the Zepeda residence. They yelled "what's up" to the three people, and then all six began to fight. After a while, [petitioner] and the two others fled. Twenty minutes later, Hernandez phone Riojas, and she told him about the fight.
>
>	Riojas testified that Hernandez was not one of the other two men with [petitioner]. She said that after she became involved in the case, [petitioner's] family and other threatened her. She also reported that her brother was beaten, and her mother's car was vandalized.

People v. Valle, No. H020638, slip op. at 3-5 (Cal.Ct.App. Jul. 10, 2002) (Resp't. Ex. 26).

## DISCUSSION

A.	Standard of Review

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

1   United States; or (2) resulted in a decision that was based on an unreasonable
2   determination of the facts in light of the evidence presented in the State court
3   proceeding." Id. § 2254(d).

4   "Under the 'contrary to' clause, a federal habeas court may grant the writ if
5   the state court arrives at a conclusion opposite to that reached by [the Supreme]
6   Court on a question of law or if the state court decides a case differently than [the]
7   Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529
8   U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal
9   habeas court may grant the writ if the state court identifies the correct governing
10  legal principle from [the] Court's decisions but unreasonably applies that principle
11  to the facts of the prisoner's case." Id. at 413.

12  "[A] federal habeas court may not issue the writ simply because the court
13  concludes in its independent judgment that the relevant state-court decision applied
14  clearly established federal law erroneously or incorrectly. Rather, that application
15  must also be unreasonable." Id. at 411. A federal habeas court making the
16  "unreasonable application" inquiry should ask whether the state court's application
17  of clearly established federal law was "objectively unreasonable." Id. at 409.

18  A federal habeas court may grant the writ it if concludes that the state court's
19  adjudication of the claim "resulted in a decision that was based on an unreasonable
20  determination of the facts in light of the evidence presented in the State court
21  proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any
22  determination of a factual issue made by a state court unless the petitioner rebuts the
23  presumption of correctness by clear and convincing evidence. 28 U.S.C.
24  §2254(e)(1).

25  The only definitive source of clearly established federal law under 28 U.S.C.
26  § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the

27
28  Order Denying Petition for a Writ of Habeas Corpus
    N:\Pro - Se\8.17.2007\03-05612 Valle05612_denyHC.wpd         5

time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

B.  Claims and Analysis

  1.  Insufficient Evidence

Petitioner claims that there was insufficient evidence to support the murder conviction based on the theory of aiding and abetting as given in the jury instructions. Petitioner claims that the only viable theory of aiding and abetting was the "natural and probable consequences" doctrine, but that since the jury was not instructed on this doctrine at trial, it can not now be used to support the unlawful conviction based on otherwise insufficient evidence.

The relevant inquiry on review of a constitutional challenge to the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The reviewing court "faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear on the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326.

In light of 28 U.S.C. § 2254(d), a federal habeas court applies the standard of Jackson with an additional layer of deference. Juan H. V. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). A federal habeas court must ask whether the operative state court decision reflected an unreasonable application of Jackson to the facts of the

1  case. Id. at 1275. A writ may be granted only if the state court's application of the

2  Jackson standard was "objectively unreasonable." Id. at 1275 n.13 (quoting

3  Williams, 529 U.S. at 409).

4  Second degree murder was defined in CALJIC No. 8.30 as "the unlawful

5  killing of a human being when: 1. [t]he killing resulted from an intentional act, 2.

6  [t]he natural consequences of the act are dangerous to human life, and 3. [t]he act

7  was deliberately performed with knowledge of the danger to, and with conscious

8  disregard for, human life. When the killing is the direct result of such an act, it is

9  not necessary to prove that the defendant intended that the act would result in the

10  death of a human being." (Resp't. Ex. 4 at 913.) In other words, second degree

11  murder requires a finding of implied malice. See CALJIC No. 8.11; Resp't. Ex. 4 at

12  908. An aider and abettor was defined in CALJIC No. 3.01 as follows: "A person

13  aids and abets the [commission] ... of a crime when he; 1. [w]ith knowledge of the

14  unlawful purpose of the perpetrator and 2. [w]ith the intent or purpose of committing

15  or encouraging or facilitating the commission of the crime, and 3. [b]y act or advice

16  aids, promotes, encourages or instigates the commission of the crime." (Resp't. Ex.

17  4 at 902.)

18  Here, the California Court of Appeal found that there was sufficient evidence

19  to support the second degree murder conviction on the theory of aiding and abetting.

20  > Viewed in the light most favorable to the verdicts (see People
21  > v. Rodriguez (1999) 20 Cal.4th 1, 12), the evidence reveals that on
22  > September 18, Molina, Walter, and Arthur, among others, walked by
23  > defendant Hernandez, hurled a gang insult at him, and slashed the
24  > tires on [petitioner's] father's truck. They continued walking and
25  > ultimately congregated outside 8090 Springdale Court. [Petitioner],
26  > Hernandez, and a third person followed them to Springdale Court.
27  > At least [petitioner] and the third person were armed with knives.
28  > Within moments of arriving, [petitioner and Hernandez] and their
   > confederate attacked Molina, Walter, and Arthur, stabbing all three
   > of them, and killing Walter.
   > Given this evidence and the expert testimony about the
   > underlying animosity between Norteño and Sureño gangs, the jury
   > could have reasonably found that [petitioner], Hernandez, and their

Order Denying Petition for a Writ of Habeas Corpus
N:\Pro - Se\8.17.2007\03-05612 Valle05612_denyHC.wpd    7

> confederate intended to retaliate against Molina, Arthur, and Walter by violently attacking them. The jury could further have found that all of them knew before the attack, or at least once it commenced, that they had knives, intended to use them, and were using them to stab their victims. Under the circumstances, therefore, the jury could reasonably conclude that [petitioner and Hernandez] and their confederate intended to attack Walter, they knew their confederate was stabbing him in a way that was dangerous to his life in conscious disregard for that danger, and they intended to encourage or facilitate their confederate's conduct. In other words, the jury could reasonably convict [petitioner and Hernandez] of aiding and abetting second degree murder - a killing with implied malice. (Cf. People v. Woods (1991) 226 Cal.App.3d 1037; People v. Gonzales (1970) 4 Cal.App.3d 593.)

People v. Valle, slip op. at 6-7.

The state appellate court correctly applied the standard of Jackson in concluding that a jury could have found the essential elements of second degree murder beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution. See Jackson, 443 U.S. at 319. The state court concluded that a reasonable jury could find that the perpetrator of Walter's murder acted with implied malice, i.e., he was armed with a knife and intentionally assaulted Walter with that knife, the natural consequences of such an attack was dangerous to Walter's life, and that the perpetrator used that knife on Walter knowing that such conduct would endanger Walter's life and in conscious disregard for that life. See CALJIC No. 8.30. Since petitioner was present at the time of the gang insult, was also armed with a knife, and joined in the attack, the court concluded that under the circumstances, a reasonable jury could find that petitioner aided and abetted in perpetrator's attack upon Walter knowing the perpetrator's unlawful purpose and intending to aid in the commission of the crime. See CALJIC No. 3.01. Petitioner's claim does not merit federal habeas relief.

Petitioner's claim that the trial court's failure to give instructions on the doctrine of "natural and probable consequences" requires a reversal of his conviction is without merit. The prosecution did not charge petitioner on the doctrine of

Order Denying Petition for a Writ of Habeas Corpus
N:\Pro - Se\8.17.2007\03-05612 Valle05612_denyHC.wpd         8

1  "natural and probable consequences," which, according to the California Court of
2  Appeal, is a "theory of *consequential* vicarious liability."³ People v. Valle, slip op.
3  at 9 (emphasis in original).  Rather, the prosecution argued a more direct theory:
4  aiding and abetting second degree murder.  (Resp't. Ex. 18 at 13.)  Therefore it was
5  not necessary to instruct the jury on the doctrine of "natural and probable
6  consequences" as petitioner contends.  The trial court did not err in failing to give
7  such instructions sua sponte.

8      The California Court of Appeal's decision was not objectively unreasonable.
9  See Williams, 529 U.S. at 409; Juan H., 408 F.3d at 1275 n.13.  The state appellate
10 court reasonably determined that there was ample evidence to support petitioner's
11 conviction for second degree murder.  Petitioner is not entitled to federal habeas
12 relief on this claim.  See 28 U.S.C. § 2254(d).  Accordingly, petitioner's claim is
13 DENIED.

14     2.    <u>Improper Jury Instructions</u>

15     Petitioner's second claim is that the trial court erred in including an
16 inapplicable second degree felony murder instruction to the jury which was highly
17 prejudicial and warrants reversal of his conviction.  Specifically, petitioner contends
18 that instructing the jury in the full language of CALJIC No. 8.51, which included the
19 sentence, "[i]f a person causes another's death while committing a felony which is
20 dangerous to human life, the crime is murder," required the jury to conclusively
21 presume murder if the death resulted during the commission of a felony as well as
22 relieved the jury of its obligation to find the essential element of malice needed for a

---

[3] According to the state appellate court, "[t]he natural-and-probable-consequences is 'based on the recognition that "aiders and abettors should be responsible for the criminal harms they have naturally, probably and foreseeably put in motion."' [Citations.]  The aider and abettor need not have actual advance knowledge or intent concerning the additional harm for which he or she may be held liable.  Rather, criminal knowledge and intent are constructively imputed because the additional harm is reasonably foreseeable." People v. Valle, slip op. at 8-9.

Order Denying Petition for a Writ of Habeas Corpus
N:\Pro - Se\8.17.2007\03-05612 Valle05612_denyHC.wpd    9

second degree murder conviction.

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that an ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle v. McGuire, 502 U.S. at 72; see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. See Estelle, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).

Petitioner's claim is without merit. The allegedly prejudicial instruction regarding felony murder must not be considered in isolation but in context of the instructions as a whole and the trial record. See Estelle, 502 U.S. at 72. The California Court of Appeal's was correct in its conclusion that the instruction was not prejudicial in the overall context of the trial:

> Here, the jury was repeatedly told that murder requires a finding of malice, express or implied. The court explained that implied malice involved the commission of an act that is dangerous to human life. The court emphasized that to prove murder, the prosecutor had to prove malice beyond a reasonable doubt. The challenged instructional language echoed the "dangerous to human life" language of the implied malice instruction. Moreover, its immediate context indicated that the purpose of the language was to distinguish murder from manslaughter and not offer an additional theory of liability. In this regard, we note that the court did not give the usual felony murder instructions that explain this theory. (See, e.g., CALJIC Nos. 8.21 [first degree felony murder]; 8.32 [second degree felony murder].) The court also removed references to felony murder in other instructions that it gave. Last, we note that the prosecutor never referred to this sentence, mentioned felony murder, or in any way suggested that [petitioner and Hernandez] could be

Order Denying Petition for a Writ of Habeas Corpus
N:\Pro - Se\8.17.2007\03-05612 Valle05612_denyHC.wpd         10

> convicted of murder without a finding that the perpetrator killed Walter with malice. On the other hand, two defense attorneys heard the instruction and did not object to it. Although the failure to object did not waive the issue on appeal, it reveals that they perceived little or no danger that the jury might unduly focus on and misunderstand the purpose of the court's language.

People v. Valle, slip op. at 12-13.

The felony murder instruction in the context of the instructions as whole did not so infect the entire trial process such that petitioner's conviction violates due process. See Estelle, 502 U.S. at 72. The jury was repeatedly instructed on the element of malice, which was not only given separately in CALJIC No. 8.11 (Resp't. Ex. 4 at 908.), but was also a necessary element for finding second degree murder as discussed in petitioner's first claim above. See *supra* at 7. Accordingly, the state court was not objectively unreasonable in applying Supreme Court precedent in rejecting petitioner's claim. See 28 U.S.C. § 2254(d). Petitioner's claim is DENIED.

### 3. Cumulative Error

Petitioner's final claim is that the cumulative effect of the several trial errors that occurred prejudiced him to the extent that they warrant a reversal of his conviction. See Alcala v. Woodford, 334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution). However, where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002). Petitioner has no basis for a claim of cumulative error because his petition failed to raise even a single constitutional error that had a prejudicial effect. See Mancuso, 292 F.3d 939 at 957. The state court's rejection of this claim was not contrary to or an unreasonable application of Supreme Court precedent. See 28 U.S.C. § 2254(d). Petitioner's claim is DENIED.

## **CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

DATED:  August 2, 2007

JAMES WARE
United States District Judge